IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MST & ASSOCIATES, INC., and
RUE ENTERPRISES, LLC,
          Plaintiff,

v.                                               Civil Action No. 3:25cv540

BRENDA WITHROW and
MEDICAL EQUIPMENT
SOLUTIONS LLC,
          Defendants.

## OPINION

Brenda Withrow and her company, Medical Equipment Solutions LLC ("MES"), allegedly took client information from Withrow's former employer, MST & Associates, Inc. ("MST"). For this behavior, MST and Rue Enterprises, LLC ("Rue") have brought five federal and state law claims against Withrow and MES:[1] a violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1831 *et seq.* (Count One); a claim against Withrow for breach of fiduciary duty of loyalty (Count Two); a claim against Withrow for a violation of the Virginia Computer Crimes Act ("VCCA") (Count Three); a claim against Withrow for defamation (Count Four); and a claim against MES and Withrow for tortious interference with business relations (Count Five). (ECF No. 1.)

The defendants now ask the Court to dismiss Counts One, Three, Four, and Five pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 14.) They argue that these four claims

---

[1] (ECF No. 1.) Initially, MST was the only plaintiff in the case. (*Id.*) On August 13, 2025, MST moved to add Rue as a plaintiff. (ECF No. 7.) Withrow alleged that, at the times relevant to this case, she worked for Rue and not MST. (ECF No. 8, at 1.) With the consent of the defendants, the Court allowed Rue to join on October 2, 2025. (ECF No. 20.) The instant motion to dismiss does not dispute whether Withrow worked for MST and Rue. Accordingly, this opinion does not address the issue.

either fail to allege all elements of a claim or make assertions without supporting factual allegations. (ECF No. 15, at 1.) Because the complaint sufficiently alleges facts that satisfy the elements of all claims, the Court will deny the motion to dismiss.

## I. FACTS AS ALLEGED IN THE COMPLAINT

MST provides eco-friendly medical disposal services across several states. (ECF No. 1 ¶¶ 9, 11.) These services include reselling discarded medical equipment and splitting the proceeds with the facilities that initially disposed of the equipment. (*Id.* ¶ 10.) To do this, MST has "contracts with a variety of hospital systems and medical facilities," including Inova Health System ("Inova"). (*Id.* ¶ 11.)

For over ten years, Withrow worked as an account manager for MST. (*Id.* ¶ 12.) In this role, she served as a "direct point-of-contact for MST's customers" and cultivated relationships with them. (*Id.* ¶ 13.) She also served as recordkeeper for these customer accounts. (*Id.* ¶ 14.) "Given the sensitive nature of those records, most other MST employees did not have access to the records that Withrow maintained." (*Id.*) Indeed, sometimes Withrow's electronic records "were MST's only copies of those records." (*Id.*) MST also instructed its employees that "all customer information was [the company's] sole property" and that they must keep such information "strictly confidential." (*Id.* ¶ 15.)

Around April 2025, Withrow began to prepare to leave MST. (*Id.* ¶ 16.) On April 10, 2025, she created MES, a limited liability company that also "provides disposal of medical equipment." (*Id.* ¶¶ 17–20.) Throughout the rest of that month, she forwarded work emails from MST's customers to her personal email account. (*Id.* ¶¶ 21–25.) For example, she sent herself "an email containing details of an upcoming job for Stryker Medical, one of MST's contractors," and later forwarded a message from USA Med Bed, LLC, "inquiring about coordinating a bed

2

pickup." (*Id.* ¶¶ 21, 25.) Withrow "did not alert MST" about the bed pickup; instead, she "coordinated a deal" for her or her new company, MES, to procure the beds. (*Id.* ¶ 25.) Before her departure from MST, Withrow "contacted at least 125 of MST's customers" and referred them to MES. (*Id.* ¶ 44–46.)

On May 2, 2025, Withrow resigned from MST. (*Id.* ¶ 29.) After her resignation, she failed to return confidential information, including customer information, to her former employer. (*Id.* ¶ 30.) When MST's owner and president, Delmer Shumate, asked her to return the information, Withrow "began deleting emails from her work email." (*Id.* ¶¶ 34, 36.) She then left her company-issued car and phone in a parking lot "over 60 miles away from" MST's offices. (*Id.* ¶ 40.) When MST employees retrieved these items, Withrow had deleted all company information from her phone. (*Id.* ¶¶ 41, 82.)

Around the second week of May 2025, Withrow went to Inova Loudon Hospital to solicit their business. (*Id.* ¶ 47.) Later, around May 15, 2025, she went to Inova Alexandria Hospital ("Inova Alexandria"). (*Id.* ¶ 50.) Withrow told an employee at Inova Alexandria that "MST is not paying its bills to hospitals." (*Id.*) When she made that statement, Withrow "knew [it] was false." (*Id.* ¶ 88.)

In "mid-to-late May," Shumate visited Inova Alexandria. (*Id.* ¶ 51.) "As a result of Withrow's actions, and specifically Withrow's statements," Inova Alexandria escorted Shumate from its property. (*Id.*) On May 20, 2025, Shumate reached out to several customers, all of whom "indicated that Withrow had already contacted them." (*Id.* ¶ 48.)

3

## II. DISCUSSION[2]

Withrow and MES now move to dismiss the DTSA claim, the VCCA claim, the defamation claim, and the tortious interference with business relations claim. For the reasons set forth below, the Court will deny the motion in its entirety.

### A. Count One: Defend Trade Secrets Act

The DTSA authorizes an "owner of a trade secret that is misappropriated" to bring a private civil action. 18 U.S.C. § 1836(b)(1). To plausibly plead such a claim, owners must allege "(1) the existence of a trade secret, (2) the trade secret's misappropriation, and (3) that the trade secret implicates interstate or foreign commerce." *See dmarcian, Inc. v. dmarcian Europe BV*, 60 F.4th 119, 141 (4th Cir. 2023). Here, the parties dispute whether MST and Rue pleaded the existence of a trade secret in MST's customer information.

A trade secret can take the form of "all . . . types of financial, business, scientific, technical, economic, or engineering information." 18 U.S.C. § 1839(3). Such information only counts as a "trade secret" when (1) its owner "has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known." *Id.* Withrow and MES argue that the complaint fails to allege that MST took reasonable measures or that the information had independent economic value. (*See* ECF Nos. 15, at 2–3; 19, at 1–2.) The complaint, however, sufficiently alleges that MST took reasonable steps

---

[2] Under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must present sufficient facts to state a facially plausible claim for relief. *See Short v. Harman*, 87 F.4th 593, 603 (4th Cir. 2023). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts must accept as true the complaint's factual allegations and draw all reasonable inferences in favor of the non-moving party, but need not accept the veracity of conclusions or threadbare recitals of the cause of action's elements. *Id.*; *Iqbal*, 556 U.S. at 678.

4

to limit access to client information on a need-to-know basis and that such information had economic value.

### 1. *Reasonable Measures*

A trade secret requires that a person takes "only reasonable efforts . . . to maintain secrecy. Restricting access to information, implementing confidentiality agreements, and providing physical barriers to access are all reasonable efforts." *MicroStrategy Inc. v. Bus. Objects, S.A.*, 331 F. Supp. 2d 396, 416 (E.D. Va. 2004). A company can sufficiently "state the existence of a trade secret at the pleading stage" by alleging that "it has restricted access to its alleged trade secrets and that it only disclosed such trade secrets . . . on a need-to-know basis." *Trans-Radial Sols., LLC v. Burlington Med., LLC*, No. 2:18cv656, 2019 WL 3557879, at *16 (E.D. Va. Aug. 5, 2019).

Withrow and MES contend that the complaint alleges "no detailed facts supporting these naked allegations" that MST used reasonable measures and "'instructed its employees to keep its information confidential.'" (ECF No. 15, at 2–3 (quoting ECF No. 1 ¶¶ 15, 55).) Withrow and MST also argue that the complaint does not mention anything about disclosure on a need-to-know basis, even though the complaint says that "'most other MST employees did not have access to the records that Withrow maintained as it related to the customer accounts she was tasked with maintaining.'" (ECF No. 19, at 1 (quoting ECF No. 1 ¶ 14).)

The plaintiffs, however, alleged that "Withrow worked for MST" and that MST "instructed it employees to keep all customer information strictly confidential." (ECF ¶¶ 12, 15.) "Draw[ing] all reasonable inferences in favor of the plaintiff[s]," one could infer that MST instructed Withrow to maintain secrecy around customer information. *Short*, 87 F.4th at 603. More importantly, though, MST and Rue allege that "most other employees did not have access to the records"

5

because Withrow "was tasked with maintaining them." (ECF No. 1 ¶ 14.) Although it fails to use the words "need-to-know," this allegation suggests that MST only gave customer records to those, like Withrow, who needed to know about the records to perform their jobs. At this stage, such an allegation sufficiently pleads the existence of reasonable measures. *See Trans-Radial*, 2019 WL 3557879, at *17.

### 2. *Economic Value*

Information qualifies as a trade secret when it "has independent economic value by virtue of its being secret." *OROS, Inc. v. Dajani*, No. 1:19cv351, 2019 WL 2361047, at *3 (E.D. Va. June 4, 2019). "The most important factor tending to show that a secret has economic value is that it is not readily ascertainable through legitimate means." *Trans-Radial*, 2019 WL 3557879, at *17. "What constitutes *readily* ascertainable through proper means is heavily fact-dependent and simply boils down to assessing the ease with which a trade secret could have been independently discovered." *MicroStrategy*, 331 F. Supp. 2d at 417. Courts also consider whether the information "is necessarily of the sort that is not freely shared with the public or with competitors," such as client information. *OROS*, 2019 WL 2361047, at *4.

Withrow and MES claim that a "threadbare" allegation "that 'MST's customer information constitutes information that derives independent economic value from being kept secret'" "falls far short of Rule 12(b)(6)'s requirements." (ECF No. 15, at 3 (quoting ECF No. 1 ¶ 55).) Further, the defendants argue that MST and Rue "collapse[]" the reasonable measures element and the economic value element by arguing "that if [MST] took reasonable measurers [*sic*] to protect its trade secrets, then the trade secrets have economic value because they are not readily ascertainable." (ECF No. 19, at 2.)

6

Here, MST and Rue sufficiently allege that the information at issue had economic value. First, "lists of past, present, and prospective clients . . . is necessarily" the kind of information "that is not freely shared with the public or with competitors." *OROS*, 2019 WL 2361047, at *3. Further, as described above, the plaintiffs allege that MST took reasonable steps to ensure that only the individuals who needed customer information received it. *See supra* Part II.A.1. Accordingly, a person would likely not have "independently" discovered the information. *See MicroStrategy*, 331 F. Supp. 2d at 417.

Despite the defendants' contrary assertion, courts regularly find that a company's reasonable measures to protect their trade secrets inform the economic value analysis. *See OROS*, 2019 WL 2361047, at *3 (holding that a trade secret has "economic value by virtue of its being secret"). Indeed, the statutory language contemplates that a trade secret "derives independent economic value . . . *from not being generally known*." 18 U.S.C. § 1839(3)(B) (emphasis added). Accordingly, any step MST took to preserve the secrecy of its customer information demonstrates that information's value. *See id.*

### B. Count Three: Virginia Computer Crimes Act

Though primarily a criminal statute, the VCCA provides a civil remedy for "[a]ny person whose property . . . is injured by reasons of a violation of [the VCCA]." Va. Code § 18.2-152.12(A). Such a violation may include "computer trespass," among other causes of action. *See* Va. Code § 18.2-152.4. Computer trespass occurs when a "person, with malicious intent, or through intentionally deceptive means and without authority," either (1) erases computer data or

(2) uses a computer or computer network to make an unauthorized copy of computer data. *See* Va. Code § 18.2-152.4(A)(3), -152.4(A)(6).

Withrow and MES argue that the plaintiffs inadequately pleaded the VCCA claim because they "did not make clear what statutory section" they relied on. (ECF No. 19, at 2.) Although the complaint does not specify a cause of action under the VCCA, it does allege sufficient factual allegations to state a claim for computer trespass claim under §§ 18.2-152.4(A)(3) and (A)(6). Specifically, the complaint adequately alleges that Withrow erased computer data by "delet[ing] all data from her company-issued phone," resulting in the permanent loss of certain records. (ECF No. 1 ¶ 82); *see* Va. Code §§ 18.2-152.4(A)(3). Further, the complaint alleges that Withrow made copies of private customer data by forwarding emails to her private email account. (ECF No. 1 ¶¶ 21–25.); *see* Va. Code §§ 18.2-152.4(A)(6). As a result, MST and Rue adequately pleaded a claim for computer trespass.

### *C. Count Four: Defamation*

In Virginia, defamation requires the "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 290 Va. 83, 91, 772 S.E.2d 589, 594 (2015). Here, the parties dispute whether MST and Rue properly pleaded the intent element. "The requisite intent for defamation involving a private person is essentially negligence—that the defendant 'either knew [the statement] to be false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based.'" *Ransome v. O'Bier*, 3:16cv1002, 2017 WL 1437100, at *4 (E.D. Va. Apr. 20, 2017) (quoting *Gazette, Inc. v. Harris*, 229 Va. 1, 15, 325 S.E.2d 713, 725 (1985)).

MST and Rue allege that Withrow knew her statement to the Inova Alexandria employee that MST was not paying its bills was false, which meets the intent element at this stage. (*See* ECF

8

No. 1 ¶¶ 50, 88.) Indeed, MST and Rue allege facts from which one can reasonably infer she knew the statement was false. For example, they allege Withrow managed "customer accounts" and maintained records of MST's client interactions. (*Id.* ¶ 13–14.) One can reasonably infer that Withrow learned from the client records that she maintained whether MST timely paid its debts. In this way, MST and Rue sufficiently pleaded that Withrow "knew [her statement] to be false." *Ransome*, 2017 WL 1437100, at *4 (citation omitted).

### D. Count Five: Tortious Interference with Business Relations

Under Virginia law, tortious interference with business relations has four elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) the putative interferer's knowledge of the relationship or expectancy; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the plaintiff." *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 143 (4th Cir. 2014) (citation omitted) (applying Virginia law). Withrow and MES argue the complaint does not sufficiently allege the existence of a valid business expectancy.

A valid business expectancy requires "a 'probability' of future economic benefit." *Com. Bus. Sys., Inc. v. Halifax Corp.*, 253 Va. 292, 301, 484 S.E.2d 892, 897 (1997). The mere "'possibility' that such a benefit will accrue" does not give rise to a business expectancy. *Id.* Rather, to prove a probability, the plaintiff "must meet an objective standard." *L-3 Commc'n Corp. v. Serco, Inc.*, 926 F.3d 85, 94 (4th Cir. 2019) (citation omitted). Accordingly, a "plaintiff's belief and hope that a business relationship will continue is inadequate to sustain" a claim. *Halifax Corp.*, 253 Va. at 301, 484 S.E.2d at 897. Evidence of "ongoing contractual relationships," however, objectively demonstrates a valid business expectancy. *Entri, LLC v. GoDaddy.com, LLC*, No. 1:24cv569, 2024 WL 4468488, at *10 (E.D. Va. Oct. 10, 2024).

9

Here, MST and Rue allege ongoing contractual relationships. For example, the complaint states that "MST has contracts with a variety of hospital systems and medical facilities across the Commonwealth and in the surrounding states, including, but not limited to: Inova Health System." (ECF No. 1 ¶ 11.) Further, the complaint details emails in which current customers, including at least one contractor, extend business offers to MST. (*See id.* ¶¶ 21–25.) These allegations sufficiently establish a valid business expectancy through ongoing contractual relationships. Accordingly, the Court denies the motion to dismiss the tortious interference with a business expectancy claim.

### III. CONCLUSION

The complaint contains sufficient factual allegations to carry MST and Rue's claims past the pleading stage. Accordingly, the Court will deny the motion to dismiss. (ECF No. 14.)

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 20 January 2026
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge